Daniel C. Girard (State Bar No. 114826)
Jordan Elias (State Bar No. 228731)
Simon S. Grille (State Bar No. 294914)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California 94108
Tel: (415) 981-4800
*dcg@girardgibbs.com*
*je@girardgibbs.com*
*sg@girardgibbs.com*

*Counsel for Plaintiffs Meagan Chamberlain,*
*Edward Pistorio, Laura Lane, and Rosalene Mullins*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| MEAGAN CHAMBERLAIN, EDWARD PISTORIO, LAURA LANE, and ROSALENE MULLINS on behalf of themselves and all others similarly situated,<br><br>                Plaintiffs,<br>   v.<br><br>LG ELECTRONICS U.S.A., INC. and LG ELECTRONICS MOBILECOMM U.S.A., INC.,<br><br>            Defendants. | Case No. 2:17-cv-2046<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiffs Meagan Chamberlain, Edward Pistorio, Laura Lane, and Rosalene Mullins ("Plaintiffs"), individually and on behalf of all others similarly situated, allege the following against Defendants LG Electronics U.S.A., Inc. and LG Electronics MobileComm U.S.A. (collectively, "LG").

## SUMMARY OF THE ACTION

1.     This is a case on behalf of consumers who purchased LG G4 and LG V10 cell phones (the "LG Phones").  A defect in the LG Phones gives them a propensity to crash and then reboot interminably, which renders the phones inoperable and unfit for any use.  This defect is commonly referred to as a "bootloop defect."

2.     Soon after releasing the LG G4 phone in April 2016, LG began receiving warranty claims and complaints from consumers reporting failing phones.  Consumers also reported LG G4 product failures on various websites.  LG publicly acknowledged the bootloop defect in January 2016, admitting that a "loose contact between components" causes the malfunction.  Despite this admission LG did not undertake a recall or offer an adequate remedy to consumers who purchased the LG G4 phone.  LG instead replaced LG G4s that failed within the one-year warranty period with phones that had the same defect.  And LG refused to provide any remedy to purchasers of LG G4s that failed outside the warranty period because of the bootloop defect.

3.     LG released the LG V10 phone in October 2015.  The LG V10's hardware closely resembles the LG G4 with only a few adjustments, such as expanded storage and an additional camera.  Within a few months of its release, reports emerged that the V10 contained the same bootloop defect as the G4.  LG V10 phones unexpectedly crash and then reboot interminably.  Yet LG continues to sell and distribute the V10.

4.     Plaintiffs and Class members sustained economic losses attributable to LG's violations and seek relief through this action.

## PARTIES

5.     Plaintiff Meagan Chamberlain is a citizen of the State of California.

6.     Plaintiff Edward Pistorio is a citizen of the State of Florida.

1

CLASS ACTION COMPLAINT
CASE NO.  2:17-cv-2046

7.      Plaintiff Laura Lane is a citizen of the State of New York.

8.      Plaintiff Rosalene Mullins is a citizen of the State of Washington.

9.      Defendant LG Electronics U.S.A., Inc. is incorporated under Delaware law and maintains its principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

10.     Defendant LG Electronics MobileComm U.S.A., Inc. is incorporated under California law and maintains its principal place of business at 1000 Sylvan Avenue, Englewood Cliffs, New Jersey 07632.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over the lawsuit under the Class Action Fairness Act, 28 U.S.C. § 1332, because this is a proposed class action in which: (1) there are at least 100 Class members; (2) the combined claims of Class members exceed $5,000,000, exclusive of interest, attorneys' fees, and costs; and (3) Plaintiffs and Defendants are domiciled in different states.

12.     The Court has personal jurisdiction over LG because it has sufficient minimum contacts in California to render the exercise of jurisdiction by this Court proper.  LG intentionally avails itself of markets within California through the promotion, sale, marketing, and distribution of its products in this State.

13.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PLAINTIFF-SPECIFIC ALLEGATIONS
### Plaintiff Meagan Chamberlain

14.     Ms. Chamberlain and her parents jointly purchased an LG V10 cell phone from T-Mobile US, Inc. ("T-Mobile") in November 2015.  Ms. Chamberlain and her parents made their purchase through T-Mobile's "Jump" program, under which they agreed to pay approximately $30 each month, for a term of 24 months, to cover the cost of the phone.

CLASS ACTION COMPLAINT
CASE NO.  2:17-cv-2046

15.     In October 2016, Ms. Chamberlain's LG V10 unexpectedly shut itself down.  When she attempted to restart the phone, it rebooted continuously to the "LG Life's Good" screen, but failed to turn on.

16.     On October 26, 2016, Ms. Chamberlain contacted LG about her failed V10. LG instructed Ms. Chamberlain to send her failed V10 to LG's repair center.  Ms. Chamberlain shipped her V10 to LG's repair center.

17.     LG returned Ms. Chamberlain's device with a note stating that LG had repaired the device.  Ms. Chamberlain charged and then attempted to start up the phone. But the phone would not start and instead manifested the same bootloop defect as her prior LG V10.

18.     Ms. Chamberlain next contacted her cellular service provider, T-Mobile. After she explained the problems with her LG V10 phone, T-Mobile offered to furnish a replacement LG V10 to Ms. Chamberlain.  She drove to a T-Mobile store to pick up this replacement device on November 15, 2016.

19.     Ms. Chamberlain used the replacement LG V10 for about one month. Concerned about the phone's durability, Ms. Chamberlain began saving money to upgrade to a different type of cell phone.

20.     Ms. Chamberlain does not have a land line and depends on her cell phone to communicate.  She requires a functioning cell phone to perform her work, which requires her to be on call.

21.     On December 29, 2016, Ms. Chamberlain had saved enough money to upgrade to an iPhone.  She made a $249 down payment for an iPhone and began making monthly payments for the iPhone instead of the V10.

22.     Although Ms. Chamberlain was reluctant to switch to the iPhone because it uses a different operating system than the LG V10, she felt she had no choice because of her experiences with V10 product failures.

CLASS ACTION COMPLAINT
CASE NO.  2:17-cv-2046

23.     Ms. Chamberlain was unaware of the bootloop defect in the LG V10 when she purchased it.  Had LG disclosed this defect to Ms. Chamberlain, she would not have purchased this phone or would have paid less for it.

**Plaintiff Edward Pistorio**

24.     Mr. Pistorio purchased two LG G4 phones in September 2015 from AT&T Inc. ("AT&T").  Mr. Pistorio purchased one G4 for himself and one G4 for his wife.  Mr. Pistorio made these purchases through AT&T's Next program, under which he pays approximately $25 each month for each phone, for a term of 18 months, to cover the cost of the phones.

25.     Mr. Pistorio's phone failed because of the bootloop defect in November 2015.  Mr. Pistorio drove to an AT&T repair center where a technician examined his phone.  The AT&T technician determined that the phone could not be repaired.  Mr. Pistorio lost all of the photos and most of the data stored on his phone.  AT&T sent Mr. Pistorio another LG G4 as a replacement.

26.     In February 2016, Mr. Pistorio's second LG G4 failed because of the bootloop defect.  AT&T then provided him with another replacement LG G4.

27.     Mr. Pistorio's third LG G4 often freezes.  The only way to unfreeze the phone during these incidents is to remove the phone's battery.  Mr. Pistorio's third LG G4 is manifesting signs of the bootloop defect and is unmerchantable.

28.     Mr. Pistorio uses his third LG G4 less often, and for fewer demanding tasks, than he would have absent the phone's diminished performance and warning signs of failure.

29.     In the second week of March 2017, Mr. Pistorio's wife's LG G4 failed as a result of the bootloop defect.  LG refused to provide any remedy on the basis that the warranty on her phone expired in September 2016.

30.     Mr. Pistorio made a claim on his wife's phone through an insurance plan he purchased from AT&T.  Under the AT&T insurance plan, Mr. Pistorio paid a $120 non-refundable deductible to obtain a Samsung Galaxy S7 phone as a replacement for his

4

wife.  Mr. Pistorio is now obligated to make $25 monthly payments for the Galaxy S7 through February 2018.

31.    Mr. Pistorio was unaware of the bootloop defect in the LG G4 when he purchased LG G4s for his wife and himself.  Had LG disclosed this defect to Mr. Pistorio, he would not have purchased these phones or would have paid less for them.

**Plaintiff Laura Lane**

32.    Ms. Lane purchased an LG G4 phone on July 16, 2015.  She made her purchase through AT&T's Next program, through which she pays $27.92 each month, for a term of 24 months, to cover the cost of the phone.

33.    Ms. Lane's phone failed because of the bootloop defect in December 2015.  AT&T replaced the phone with a refurbished LG G4.

34.    Ms. Lane's second phone failed because of the bootloop defect on June 2016.  AT&T again replaced it with a refurbished LG G4.

35.    Ms. Lane's third LG G4 often freezes and becomes non-responsive.  The phone is manifesting signs of the bootloop defect and is unmerchantable.

36.    Ms. Lane continues to pay $27.92 each month to cover the cost of her originally purchased LG G4.

37.    Ms. Lane was unaware of the bootloop defect in the LG G4 phone when she purchased it.  Had LG disclosed this defect to Ms. Lane, she would not have purchased this phone or would have paid less for it.

**Plaintiff Rosalene Mullins**

38.    Ms. Mullins purchased an LG G4 on July 4, 2015.  Her LG G4 failed because of the bootloop defect on May 10, 2016.

39.    Ms. Mullins's wireless carrier, Verizon, sent her a refurbished LG G4.  On or around July 3, 2016, Ms. Mullins's refurbished LG G4 failed because of the bootloop defect.

CLASS ACTION COMPLAINT
CASE NO.  2:17-cv-2046

40.     After her second phone failed, Ms. Mullins spent a significant amount of time on the phone with LG's customer service department, seeking either a refund or a functional, non-defective phone.  LG declined to do so.

41.     Verizon sent Ms. Mullins a third LG G4.  The phone often freezes or becomes too slow to use, particularly when she is trying to visit a website or to type using the keypad on the phone's screen.  Additionally, when calls last more than 10 minutes, the phone gets too hot to hold against her ear; she therefore has had to terminate important phone calls that she could not complete by speakerphone.  Ms. Mullins' third LG G4 is manifesting signs of the bootloop defect and is unmerchantable.

42.     Ms. Mullins was unaware of the bootloop defect affecting the LG G4 phone when she purchased it.  Had LG disclosed this defect to Ms. Mullins, she would not have purchased this phone or would have paid less for it.

## COMMON ALLEGATIONS OF FACT

### The LG G4 Smartphone

43.     Since June 2015, LG has manufactured, marketed, distributed, and warranted LG G4 mobile phone devices throughout the United States.

44.     The LG G4 is a premium smartphone.  It is priced at $619 or $599, depending on whether the device is clad in leather or ceramic.

45.     LG sold LG G4s to consumers directly as well as through authorized retailers.  Many of those retailers subsidized the device's purchase price based on consumers' agreement to enter into cellular service agreements with a term of two years.

### The LG V10 Smartphone

46.     Since October 2015, LG has manufactured, marketed, distributed, and warranted LG V10 mobile phone devices throughout the United States.

47.     In terms of hardware, the V10 is nearly identical to the G4 with a few adjustments, including a faster processor, expanded memory and storage, and an

CLASS ACTION COMPLAINT
CASE NO.  2:17-cv-2046

additional camera.  The LG V10 also has a larger screen and different cosmetic features.

48.    Like the LG G4, the LG V10 is a premium smartphone.  It was priced at $699 when released.

49.    LG has sold LG V10s to consumers directly as well as through authorized retailers.  Many of those retailers subsidized the device's purchase price based on consumers' agreement to enter into cellular service agreements with a term of two years.

<b>The Bootloop Defect</b>

50.    A cell phone's "processor" manages and controls the functioning of the device.  The processor connects to other device components—including the antenna, screen, and microphone—through the main circuit board (the "motherboard").

51.    At the time of manufacture, the LG G4's processor was inadequately soldered to the motherboard.  As a result, the solder bumps connecting the processor to the motherboard are unable to withstand the heat—and the cycles of thermal expansion and contraction—created by routine operation of the processor.  The bumps consequently crack and fail.

52.    As the solder bumps connecting the LG G4's processor to the motherboard begin to crack and fail, the device manifests symptoms of impending failure by freezing and becoming temporarily non-functional, suffering performance slowdowns, overheating, and/or rebooting at random.  Eventually, after these warning signs, the LG G4 fails entirely, through an endless reboot cycle.

53.    The hardware components in the LG V10 resemble the LG G4.  The LG V10 manifests the same bootloop defect symptoms as the LG G4.

54.    To the extent they have not been backed up, all photographs, videos, contacts, and other data on the phone are permanently lost when LG Phones fail due to the bootloop defect.

CLASS ACTION COMPLAINT<br>CASE NO.  2:17-cv-2046

55.     There is nothing any consumer or repair technician can to do fix LG Phones that have failed because of the bootloop defect.

**Thousands of Consumers' Phones Were Frozen by the Bootloop Defect**

56.     LG, like other phone manufacturers, conducts pre-release testing of its devices.  As a result of LG's pre-release testing of and consumer trial program for the LG G4, LG was aware, or reasonably should have been aware, prior to bringing the LG G4 to market, of its embedded defect and resulting propensity to fail.

57.     Particularly given the similarities in the hardware of the LG G4 and the LG V10, LG was aware, or reasonably should have been aware, prior to bringing the LG V10 to market, of its embedded defect and resulting propensity to fail.

58.     LG did not disclose the bootloop defect in the LG Phones to consumers.  LG adhered to its plan of marketing, selling, and distributing the LG Phones.

59.     Thousands of online posts have reported bootloop defects in the LG G4.  For example, one website displays a conversation thread with 1,651 posts relating to the LG G4 bootloop defect.[1]  Another website displays a conversation thread with 940 posts relating to the LG G4 bootloop defect.[2]  Additionally, over 13,000 consumers have signed online petitions asking LG to responsibly address the bootloop defect in the LG G4.[3]

60.     Consumers have lodged similar complaints about the LG V10 on forums, social networks, and product review websites.[4]  One consumer posted an open letter to LG about the LG V10's bootloop defect.[5]  Other consumers have initiated petitions demanding that LG adequately address the V10's bootloop problem.[6]

---

[1] http://forum.xda-developers.com/g4/help/lg-g4-stuck-bootloop-t3268734/page150 (last visited Mar. 9, 2017).

[2] http://forums.androidcentral.com/lg-g4/636120-kinda-official-lg-g4-bootloop-thread-32.html (last visited Mar. 9, 2017).

[3] https://www.change.org/p/lg-mobile-launch-a-replacement-program-for-defective-lg-g4s (last visited Mar. 9, 2017); https://www.change.org/p/lg-electronics-lg-g4-bootloop-stop-replacement-or-full-refund (last visited Mar. 9, 2017).

[4] https://www.reddit.com/r/lgv10/comments/4yao1s/v10_bootloop_please_report_in_this_sticky_thread/ (last visited Mar. 9, 2017); https://forum.xda-developers.com/lg-v10/help/lg-v10-bootloop-how-to-fix-t3315773/page3 (last visited Mar. 9, 2017).

[5] http://www.androidauthority.com/community/threads/an-open-letter-to-lg-in-regards-to-the-v10-boot-loop-issue.33454/ (last visited Mar. 9, 2017).

[6] https://www.change.org/p/lg-electronics-lg-v10-boot-loop-of-death?source_location=minibar (last visited Mar. 9, 2017); https://www.ipetitions.com/petition/lg-v10-boot-loop-of-death (last visited Mar. 9, 2017).

8

CLASS ACTION COMPLAINT
CASE NO.  2:17-cv-2046

**LG's Awareness of and Inadequate Response to the Bootloop Defect**

61.     On October 1, 2015, Sprint retailers received a memorandum from Sprint regarding the LG G4.  The memorandum stated that "a hardware issue has been identified in the LG G4."  According to the memorandum, the LG G4 "will not power on . . . Freezes/Fails to boot up. . . . There is no work around for this issue."

62.     The Sprint memorandum further stated that "LG is aware of the issue," and that "[a]ll locations must cease to sell the LG G4 for the time being."

63.     Less than a month after Sprint distributed this memorandum, LG released the LG V10 containing the same or similar defective hardware as the LG G4.

64.     On January 25, 2016, LG issued the following statement:

> LG Electronics has been made aware of a booting issue with the LG G4 smartphone that has now been identified as resulting from a loose contact between components. Customers who are experiencing booting issues with their LG G4s should contact their local carrier from where the G4 was purchased or a nearby LG Service Center (www.lg.com/common) for repair under full warranty.
>
> Customers who purchased their G4 devices from non-carrier retailers should contact an LG Service Center with the understanding that warranty conditions will differ. LG Electronics is committed to providing the highest standards of product quality and customer service and apologizes for the inconvenience caused to some of our customers who initially received incorrect diagnoses.[7]

65.     After this announcement, LG continued to manufacture LG Phones with the bootloop defect, selling them at full price.

66.     LG has required some consumers whose LG Phones failed due to the bootloop defect during the warranty period to incur expenses, including to diagnose the problem and to return the device to LG's repair depot.

---

[7] http://www.androidauthority.com/lg-admits-g4-bootloop-problem-hardware-fault-669603/ (last visited March 9, 2017).

CLASS ACTION COMPLAINT
CASE NO.  2:17-cv-2046

67.     The refurbished LG Phones that LG returned to some consumers were just as likely to fail because of the bootloop defect as the original LG Phones the consumers purchased.

68.     The high volume of LG Phones returned because of the bootloop defect has led to delays on the part of LG in repairing and replacing devices.

69.     Because consumers depend on their cell phones for a range of communication services, LG's repair delays have caused many consumers to purchase new phones.

70.     Many consumers whose LG Phones failed outside of the warranty period because of the bootloop defect also have been forced to purchase new phones.

71.     To the extent that the LG Phones failed before consumers' two-year contracts for cellular services expired, many consumers were unable to avail themselves of carrier subsidies and, thus, paid full price for new phones.

**Further Details Regarding Consumers and Cell Phones**

72.     Cell phones have increasingly become a necessity of life.

73.     Approximately nine out of every ten Americans own a cell phone. According to a recent study by the Centers for Disease Control and Prevention, 41 percent of American households use cell phones exclusively.  These households encompass 93 million adults and nearly 35 million children.

74.     The average American consumer replaces his or her cell phone every 28 months.

75.     Most cellular plans require a two-year service contract.  Consumers who purchase a phone in connection with such a contract often receive subsidies from their cellular service provider that make the high cost of cell phones more affordable. Consumers who purchase a phone outside of contract, however, generally must pay full price for the phone.  Therefore, the failure of a cell phone after the manufacturer's one-year warranty period has expired, but before the carrier's two-year cellular contract has expired, may necessitate a consumer's unsubsidized payment for a replacement phone.

10

CLASS ACTION COMPLAINT
CASE NO.  2:17-cv-2046

## CLASS ACTION ALLEGATIONS

76.     Plaintiffs bring this action on behalf of themselves and all others similarly situated pursuant to Fed. R. Civ. P. 23.  This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Rule 23.

77.     The proposed Class and Subclasses are defined as:

### Class

All individuals within the United States who purchased at least one LG G4 or LG V10 phone from LG or its authorized retailers.

### California Subclass

All individuals within the State of California who purchased at least one LG G4 or LG V10 phone from LG or its authorized retailers.

### Washington Subclass

All individuals within the State of Washington who purchased at least one LG G4 or LG V10 phone from LG or its authorized retailers.

### Florida Subclass

All individuals within the State of Florida who purchased at least one LG G4 or LG V10 phone from LG or its authorized retailers.

78.     Excluded from the Class and Subclasses are LG, its parents, subsidiaries, affiliates, officers and directors, any entity in which LG has a controlling interest, all LG Phone owners who make a timely election to be excluded, governmental entities, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

79.     The members of the Class are so numerous that joinder is impractical.  The Class consists of at least thousands of members, whose identity is within the knowledge of LG and can be readily ascertained from LG's books and records.

80.     There are questions of law and fact common to the Class, and these common questions predominate over any questions affecting only individual Class members.  Among the questions common to the Class are:

        a.      Whether LG manufactured the LG Phones with a defect that gives them a propensity to fail;

        b.      The origins, justifications, and implementation of LG's policies relating to the bootloop defect and its manifestation in the LG Phones;

        c.      When LG became aware of the bootloop defect in the LG Phones and its reactions to that awareness;

        d.      Whether LG concealed and failed to notify consumers of the bootloop defect in the LG Phones; and

        e.      Whether LG overcharged consumers for LG Phones.

81.     The claims of Plaintiffs are typical of the claims of the Class in that the representative Plaintiffs, like all Class members, purchased LG Phones that they would not have purchased, or would have paid less for, had they known of the bootloop defect and how LG would respond to its manifestation.

82.     Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have no interests antagonistic to the interests of any other Class member.

83.     Plaintiffs are committed to the vigorous pursuit of this action and have retained competent counsel experienced in the prosecution of consumer protection class actions.

84.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Because the amount of each individual Class member's claim is small relative to the complexity of the litigation, and because of LG's financial resources, no Class member is likely to pursue legal redress individually for the violations detailed herein.

85.     Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the

CLASS ACTION COMPLAINT
CASE NO.  2:17-cv-2046

Court.  Individualized litigation also would create the potential for inconsistent and contradictory rulings.  By contrast, a class action presents fewer management difficulties, allows claims to be heard which would otherwise go unheard because of the expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CLAIM FOR RELIEF

### Breach of Implied Warranty
### (On behalf of the Class)

86.    Plaintiffs incorporate the above allegations by reference.

87.    By operation of law, LG impliedly warranted to Plaintiffs and Class members that the LG Phones they purchased were of merchantable quality and fit for their ordinary and intended use as smartphone devices.

88.    Plaintiffs and Class members are the intended third-party beneficiaries of written agreements between LG and its authorized retailers, and of the implied warranties that attach to those contracts.

89.    The LG Phones fail of their essential purpose due to a "bootloop" defect.

90.    LG breached the implied warranty of merchantability in connection with its sale and distribution of the LG Phones.  At the point of sale, the LG Phones contained an unseen manufacturing defect whose manifestation renders the product inoperable during its useful life.  The bootloop defect in the LG Phones existed when the phones left LG's possession and renders them unfit for their intended and ordinary purpose.

91.    Had consumers known of the bootloop defect, they would not have purchased LG Phones or would have paid lesser amounts for these products.

92.    Plaintiffs furnished LG an opportunity to cure its breach of warranty, to no avail.  LG has refused to recall, adequately repair, replace, or refund the purchase price of failed LG Phones.  As a direct and proximate result of LG's breach of the implied warranty of merchantability, Plaintiffs and Class members have sustained damages in an amount to be determined at trial.

13

CLASS ACTION COMPLAINT
CASE NO.  2:17-cv-2046

## SECOND CLAIM FOR RELIEF

### Violations of the Magnuson-Moss Warranty Act,
### 15 U.S.C. § 2301, *et seq.*
### (On behalf of the Class)

93.     Plaintiffs incorporate the above allegations by reference.

94.     The LG Phones are "consumer products" within the meaning of 15 U.S.C. § 2301(1).

95.     Plaintiffs and Class members are "consumers" within the meaning of 15 U.S.C. § 2301(3).

96.     LG is a "supplier" and "warrantor" within the meaning of 15 U.S.C. § 2301(4)-(5).

97.     LG warranted to Plaintiffs and Class members that the LG Phones they purchased were free from defects, of merchantable quality, and fit for the ordinary purposes for which smartphones are used.

98.     LG breached and refused to honor these implied promises.  As a result of the bootloop defect, LG Phones failed to perform in accordance with their ordinary and intended purposes.  These devices fail of their essential purpose and have a propensity to be rendered inoperable by reason of the bootloop defect.

99.     LG has been given a reasonable opportunity to cure its breach of warranty. LG has had ample notice of the defect detailed above and experienced by Plaintiffs and Class members, but has failed to provide an adequate remedy.

100.   The amount in controversy for purposes of Plaintiffs' individual claims is more than $25.

101.   As a direct and proximate result of LG's violations of the Magnuson-Moss Act, Plaintiffs and Class members have suffered injury and damages in an amount to be determined at trial.  Further, under 15 U.S.C. § 2310(d)(2), they are entitled to an appropriate award of their attorneys' fees and costs.

CLASS ACTION COMPLAINT
CASE NO.  2:17-cv-2046

## **THIRD CLAIM FOR RELIEF**

**Breach of Implied Warranty in Violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1792, *et seq.***
**(On behalf of the California Subclass)**

102.   Plaintiffs incorporate the above allegations by reference.

103.   Under the Song-Beverly Consumer Warranty Act, Civ. Code § 1792, *et seq.*, every sale of consumer goods in California is accompanied by a manufacturer's "implied warranty that the goods are merchantable."

104.   LG is a "manufacturer" of the LG Phones within the meaning of California Civil Code section 1791(j).

105.   The LG Phones are "consumer goods" within the meaning of California Civil Code section 1791(a).

106.   LG impliedly warranted to Plaintiff Chamberlain and California Subclass members that the LG Phones were "merchantable" under California Civil Code sections 1791.1(a) and 1792.

107.   LG breached this implied warranty by selling LG Phones that were not of a merchantable quality and were not fit for the ordinary purposes for which cell phones are used.

108.   The LG Phones are not of a merchantable quality because of their propensity to permanently freeze and be rendered inoperable as a consequence of the bootloop defect. The LG Phones thus fail of their essential purpose.

109.   Plaintiff Chamberlain and California Subclass members can enforce this statutory implied warranty regardless whether they are in privity with LG.  California Civil Code section 1792 provides that "[u]nless disclaimed in the manner prescribed by this chapter, every sale of consumer goods that are sold at retail in this state shall be accompanied by the manufacturer's and the retail seller's implied warranty that the goods are merchantable."  California Civil Code section 1792 thus does not require privity of contract to enforce the implied warranty established by the statute.

CLASS ACTION COMPLAINT
CASE NO.  2:17-cv-2046

Additionally, Plaintiff Chamberlain and California Subclass members can enforce this statutory implied warranty because they are the intended beneficiaries of the implied warranty that runs from LG to retail buyers of its LG Phones.

110.   As a direct and proximate result of LG's breaches of the Song-Beverly Consumer Warranty Act, Plaintiff Chamberlain and California Subclass members have been damaged in an amount to be proven at trial.

## FOURTH CLAIM FOR RELIEF

**Violations of the Unfair Competition Law ("UCL"),
Cal. Bus. & Prof. Code § 17200, *et seq.*
(On behalf of the California Subclass)**

111.   Plaintiffs incorporate the above allegations by reference.

112.   The UCL prohibits "any unlawful, unfair or fraudulent business act or practice[.]"

113.   LG's acts, omissions, and practices are unlawful because they breached the implied warranty of merchantability and violated the Song-Beverly Consumer Warranty Act and the Magnuson-Moss Warranty Act.

114.   LG's conduct is unfair in that LG violated the California public policy— legislatively declared in the Song-Beverly Consumer Warranty Act—requiring a manufacturer to ensure that goods it places on the market are fit for their ordinary and intended use.

115.   LG acted unscrupulously in a manner that is substantially injurious to consumers.  Among other things, LG:

      a.      Failed to apply reasonable care in testing the LG Phones prior to sale;

      b.      Marketed and sold the LG Phones with actual or constructive knowledge of their propensity to fail because of the bootloop defect;

      c.      Marketed and sold cell phones whose failure causes a person to permanently lose all of the photos, videos, contact information, and other data stored on his or her cell phone, to the extent such data have not been backed up;

16

CLASS ACTION COMPLAINT
CASE NO.  2:17-cv-2046

d.      Replaced defective LG Phones with defective LG Phones; and

e.      Refused to repair or replace LG Phones that failed because of the bootloop defect.

116.   LG's acts and practices are contrary to California law and policy and constitute immoral, unethical, and oppressive business practices that caused substantial injury to Plaintiff Chamberlain and California Subclass members.

117.   The gravity of the harm resulting from LG's conduct set forth above outweighs any potential utility of this conduct.  There are reasonably available alternatives that would further LG's legitimate business interests, such as replacing LG Phones with cell phones not containing the bootloop defect.

118.   Plaintiff Chamberlain and California Subclass members could not have reasonably avoided injury from LG's unfair conduct.  Plaintiff Chamberlain and California Subclass members did not know, and had no reasonable means of discovering, that the LG Phones had the bootloop defect or that LG would replace phones that failed due to the bootloop defect with phones having the same defect.

119.   All of LG's unlawful and unfair conduct occurred in the course of LG's business and was part of a generalized course of conduct.

120.   As a direct and proximate result of LG's conduct, Plaintiff Chamberlain and California Subclass members have suffered injuries, including by overpaying for their LG Phones and being denied usage of essential cellular phone service.

121.   Plaintiff Chamberlain and California Subclass members accordingly are entitled to appropriate relief, including restitution, declaratory relief, and a permanent injunction prohibiting LG from engaging in the above practices violative of the UCL. Plaintiffs also respectfully seek reasonable attorneys' fees and costs under applicable law, including California Code of Civil Procedure section 1021.5.

CLASS ACTION COMPLAINT
CASE NO.  2:17-cv-2046

# FIFTH CLAIM FOR RELIEF

## Violations of the Washington Consumer Protection Act,
## Wash. Rev. Code Ann. § 19.86.010, *et seq.*
## (On behalf of the Washington Subclass)

122.   Plaintiffs incorporate the above allegations by reference.

123.   LG, Plaintiff Mullins, and Washington Subclass members are "persons" within the meaning of Wash. Rev. Code § 19.86.010(2).

124.   LG is engaged in "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.86.010(2).

125.   The Washington Consumer Protection Act makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or practices."  Wash. Rev. Code § 19.86.020.

126.   LG's acts, omissions, and practices are "unfair" because, as set forth above, LG acted unscrupulously in a manner that is substantially injurious to consumers.

127.   Had Plaintiff Mullins and Washington Subclass members known that the LG Phones have a propensity to fail as a result of the bootloop defect, they would not have purchased the phones or would have paid less for them.

128.   Similarly, had Plaintiff Mullins and Washington Subclass members known that LG's policy and practice would be to replace one defective device with another defective device, they would not have purchased their phones, would have paid less for them, or would have mitigated their loss, including by seeking a refund.

129.    Plaintiff Mullins and Washington Subclass members suffered ascertainable loss and actual damages as a direct and proximate result of LG's unfair acts or practices.  Plaintiff and Washington Subclass members suffered diminished value of their LG Phones, in addition to lost or diminished use.

130.   Pursuant to Wash. Rev. Code § 19.86.090, Plaintiff Mullins and the Washington Subclass seek an order enjoining LG's unfair acts or practices, providing for appropriate monetary relief, and awarding reasonable attorneys' fees and costs.

CLASS ACTION COMPLAINT
CASE NO.  2:17-cv-2046

## SIXTH CLAIM FOR RELIEF

**Violations of the Florida Deceptive and Unfair Trade Practices Act,
Fla. Stat. § 501.201, *et seq*.
(On behalf of the Florida Subclass)**

131.    Plaintiffs incorporate the above allegations by reference.

132.    Plaintiff Pistorio is a "consumer" within the meaning of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.203(7).

133.    LG engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

134.    FDUTPA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce . . . ." Fla. Stat. § 501.204(1).

135.    LG's acts, omissions, and practices are "unfair" because, as set forth above, LG acted unscrupulously in a manner that is substantially injurious to consumers.

136.    Had Plaintiff Pistorio and Florida Subclass members known that the LG Phones have a propensity to fail as a result of the bootloop defect, they would not have purchased the phones or would have paid less for them.

137.    Similarly, had Plaintiff Pistorio and Florida Subclass members known that LG's policy and practice would be to replace one defective device with another defective device, they would not have purchased their phones, would have paid less for them, or would have mitigated their loss, including by seeking a refund.

138.    Plaintiff Pistorio and Florida Subclass members suffered ascertainable loss and actual damages as a direct and proximate result of LG's unfair acts or practices. Plaintiff Pistorio and Florida Subclass members suffered diminished value of their LG Phones, in addition to lost or diminished use.

139.    Pursuant to Fla. Stat. §§ 501.2105 and 501.211, LG is liable to Plaintiff Pistorio and the Florida Subclass for damages in an amount to be proven at trial, as well as appropriate injunctive relief and attorneys' fees.

19

CLASS ACTION COMPLAINT
CASE NO.  2:17-cv-2046

## SEVENTH CLAIM FOR RELIEF
### Unjust Enrichment
### (On behalf of the Class)

140. Plaintiffs incorporate by reference the above allegations as if fully set forth herein.

141. Plaintiffs conferred a benefit on LG, including by purchasing the LG Phones.

142. The LG Phones that Plaintiffs and Class members purchased were not fit for their ordinary use. LG failed to disclose the bootloop defect in the LG Phones and failed to provide an adequate remedy to those harmed by it. Therefore, retention by LG of revenues traceable to the LG Phones is unjust and inequitable.

143. Plaintiffs and Class members are entitled to restitution of their losses. LG should be required to disgorge its ill-gotten gains.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of members of the Class and Subclasses defined herein, respectfully request that the Court certify the proposed Class and Subclasses, designate Plaintiffs as Class representatives, appoint the undersigned as Class Counsel, and enter judgment through an Order:

A. Providing injunctive and equitable relief in the form of a comprehensive program to repair all LG Phones containing the bootloop defect and to return to Class members all costs attributable to the bootloop defect, including economic losses connected with their purchase of replacement phones;

B. Requiring LG to pay actual damages or restitution to Plaintiffs and Class members;

C. Requiring LG to pay any applicable statutory and/or civil penalties;

D. Awarding pre-judgment interest as prescribed by law;

E. Awarding reasonable attorneys' fees and costs as permitted by law;

CLASS ACTION COMPLAINT
CASE NO.  2:17-cv-2046

Case 2:17-cv-02046-MWF-PLA   Document 1   Filed 03/14/17   Page 22 of 22   Page ID #:22

1      F. Entering such other or further relief as the Court may deem just and

2   proper.

3   **<u>DEMAND FOR JURY TRIAL</u>**

4      Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by

5   jury of all issues triable as of right.

6

7   Dated: March 14, 2017     Respectfully submitted,

8               By:  /s/ *Jordan Elias*

9

10               Daniel C. Girard (State Bar No. 114826)

            Jordan Elias (State Bar No. 228731)

11               Simon S. Grille (State Bar No. 294914)

12               **GIRARD GIBBS LLP**

            601 California Street, 14th Floor

13               San Francisco, California 94108

14               Tel: (415) 981-4800

            *dcg@girardgibbs.com*

15               *je@girardgibbs.com*

16               *sg@girardgibbs.com*

17               *Counsel for Plaintiffs*

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT<br>CASE NO.  2:17-cv-2046